**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GEOSTABILIZATION INTERNATIONAL, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>VISIONARY CONSTRUCTION, INC. d/b/a VISIONARY SERVICES; GREAT MIDWEST INSURANCE COMPANY; SURETY COMPANY "A"; and INSURANCE COMPANY "B",<br><br>**Defendants.** | CIVIL NO. 24-1272 |
| GREAT MIDWEST INSURANCE COMPANY,<br><br>**Third-Party Plaintiff,**<br><br>v.<br><br>TASHA REID; NATASHA FORD,<br><br>**Third-Party Defendants.** | |

**OPINION AND ORDER GRANTING DEFAULT JUDGMENT**

RAÚL M. ARIAS-MARXUACH, District Judge

This matter comes before the Court on Crossclaimant and Third-Party Plaintiff Great Midwest Insurance Company's ("Great Midwest") Motion for Default Judgment as to co-defendant Visionary Construction, Inc. d/b/a Visionary Services ("Visionary"), and Third-Party Defendants Tasha Reid ("Mrs. Reid"), and Natasha Ford ("Mrs. Ford"). (Docket No. 189). Having reviewed the record, the

Court grants Great Midwest's *Motion for Default Judgment* at Docket No. 189.

## I. PROCEDURAL BACKGROUND

On June 19, 2024, Plaintiff Geostabilization International, LLC ("GSI" or "Plaintiff") filed a *Complaint* against Great Midwest and Visionary seeking recovery under the Bonds in the amount of $1,042,285.00, together with prejudgment interest, post-judgment interest, attorneys' fees, costs, and other relief. (Docket No. 1).

On September 4, 2024, Great Midwest answered the *Complaint* and filed a Crossclaim against Visionary as well as a Third-Party Complaint against Mrs. Reid and Mrs. Ford seeking full indemnification pursuant to the General Indemnity Agreement ("GIA") executed by them in consideration to Great Midwest's issuance of bonds on behalf of Visionary. (Docket No. 18).

On October 2, 2024, GSI filed a M*otion for Entry of Default* against Visionary due to its failure to timely answer the *Complaint*. (Docket No. 22). On October 9, 2024, Visionary filed an *Opposition to Entry of Default and a Motion Requesting an Extension of time*. (Docket No. 23). On October 11, 2024, the Court ordered Visionary to show cause on or before October 24, 2024, as to why the Court should not enter default. (Docket No. 24). After several procedural events, on October 29, 2024, the Court entered an order denying the *Motion for Entry of Default*. (Docket No. 28). On

November 8, 2024, Visionary filed its *Answer to the Complaint* and its *Answer to the Crossclaim* filed by Great Midwest. (Docket Nos. 29 and 30).

On December 9, 2024, GSI filed a *Motion for Entry of Default* against Mrs. Reid and Mrs. Ford due to their failure to timely answer the Third-Party Complaint. (Docket No. 33). On December 11, 2024, Third-Party Defendants, Mrs. Reid and Mrs. Ford requested a 30-day extension to answer the Third-Party Complaint, which was granted by the Court. (Dockets No. 29 and 30). On January 10, 2025, the Third-Party Defendants answered the Third-Party Complaint. (Docket Nos. 40 and 41).

On February 18, 2025, Great Midwest served upon Visionary a First Set of Interrogatories and Request for Production of Documents. The deadline to submit its answers to the same expired without Visionary serving any responses to Great Midwest. On May 15, 2025, Great Midwest filed a Motion to Compel Visionary's responses to the First Set of Interrogatories and Request for Production of Documents. (Docket No. 55). On that same date, the Court entered order providing Visionary until May 29, 2025 to serve its response to the First Set of Interrogatories, which they answered on May 25, 2025. (Docket Nos. 56 and 57).

On May 16, 2025, Plaintiff filed a *Motion to Compel* adequate responses from Visionary as to the First Set of Interrogatories and Request for Production of Documents served upon them on

February 27, 2025 by Plaintiff. (Docket No. 63). On that same date, the Court entered order providing Visionary until June 23, 2025 to respond, which Visionary answered on June 16, 2025. (Docket Nos. 56 and 57).

On June 23, 2025, attorney Francisco J. Gonzalez-Magaz filed a *Motion to Withdraw* as counsel for Visionary, Mrs. Reid, and Mrs. Ford. (Docket No. 67). On June 27, 2025, Great Midwest filed a *Motion to Compel* adequate discovery responses from Visionary. (Docket No. 69). On that same date, the Court entered an Order granting Visionary, Mrs. Reid, and Mrs. Ford until July 11, 2025 to retain new counsel. (Docket No. 70).

Visionary, Mrs. Reid, and Mrs. Ford failed to appoint new counsel by the deadline established of July 11, 2025. On July 14, 2025, Plaintiff filed a *Motion for Entry of Default* against Visionary. (Docket No. 74). On July 16, 2025, the Court directed the Clerk of the Court to enter default upon Visionary. (Docket No. 75). On July 17, 2025, the Clerk entered default as to Visionary. (Docket No. 76).

On July 18, 2025, attorney Angel Sosa-Báez filed a Notice of Appearance on behalf of Visionary, Mrs. Reid, and Mrs. Ford and a *Motion to Vacate the Clerk's entry of Default* against them. (Docket Nos. 77 and 78). On August 6, 2025, the Court entered Order setting aside the entry of default upon Visionary, Mrs. Reid, and Mrs. Ford. (Docket No. 80).

On September 3, 2025, Great Midwest filed a *Second Motion to Compel Discovery Responses from Visionary*. (Docket No. 89). On November 26, 2025, the Court entered Order granting the same and directing Visionary to provide the discovery requested by December 9, 2025. (Docket No. 101).

On March 4, 2026, the United States Magistrate Judge Giselle López-Soler entered an Order scheduling a Settlement Conference for April 10, 2026. (Docket No. 137). In the Order, Judge López-Soler required that a representative of each party with binding authority to settle the matter must be present during the in-person conference. Id. Judge López-Soler also warned the parties that failure to have a representative present would result in the imposition of sanctions. Id.

On March 30, 2026, attorney Angel Sosa-Báez, filed a *Motion for Leave to Withdraw as Counsel of Record* for Visionary, Mrs. Reid, and Mrs. Ford. (Docket No. 138). On March 31, 2026, the Court entered an Order holding in abeyance the Motion to Withdraw by counsel, ordered Visionary, Mrs. Reid, and Mrs. Ford to appoint new counsel by April 29, 2026, and warned them that failure to comply with the Order would result in the imposition of sanctions. (Docket No. 139). On April 6, 2026, the Judge López-Soler entered an Order rescheduling the Settlement Conference for May 8, 2026, reiterating that a representative of each party with binding authority to settle the matter must be present during the in-

person conference; and that failure to have a representative present would result in the imposition of sanctions. (Docket No. 147).

Visionary, Mrs. Reid, and Mrs. Ford failed to appoint new counsel by the deadline established of April 29, 2026. On April 30, 2026, Plaintiff moved for Sanctions to be imposed upon Visionary for failing to appear with new counsel by April 29, 2026 as ordered. (Docket No. 149). On May 1, 2026, the Court entered Order granting the *Motion for Sanctions* and found Visionary, Mrs. Reid, and Mrs. Ford in Contempt for failure to comply with the Court's order at Docket No. 139. (Docket No. 151). The Court also held that if new counsel did not enter an appearance by May 15, 2026, the Court would issue an order requiring Visionary, Mrs. Reid, and Mrs. Ford to show cause as to why default should not be entered. Id.

Visionary, Mrs. Reid, and Mrs. Ford failed to comply with the Order to appear in-person at the Settlement Conference set for May 8, 2026. Hence, on May 8, 2026, Judge López-Soler sanctioned each of them in the amount of $250. (Docket No. 163). On May 11, 2026, Visionary, Mrs. Reid, and Mrs. Ford filed a *Motion for Reconsideration* arguing that they were engaged in good-faith efforts to secure new counsel but had not found one. (Docket No. 164). On May 11, 2026, the Court entered an Order noting that Visionary, Mrs. Reid, and Mrs. Ford did not seek an extension of

time before the April 29, 2026 deadline for substitute counsel to enter an appearance and thus denied their *Motion for Reconsideration*. (Docket No. 168).

Visionary, Mrs. Reid, and Mrs. Ford failed to appoint new counsel by the May 15, 2026 deadline established by the Court. As a result, on June 1, 2026, Great Midwest requested that the Court issue an order to show cause as to why default should not be entered against them due to their failure to appoint new counsel by the deadline of May 15, 2026. (Docket No. 176). On June 2, 2026, the Court ordered Visionary, Mrs. Reid, and Mrs. Ford to show cause by June 16, 2026 as to why default should not be entered against them in this case. (Docket No. 177). On June 16, 2026, Visionary, Mrs. Reid, and Mrs. Ford filed a *Motion in Compliance* explaining that they had not been able to reach an agreement for new legal representation and that it was not their intention to hinder or delay the case. (Docket No. 180).

On June 18, 2026, the Court entered an Order denying their Motion in Compliance, stating that:

> The Court is unpersuaded that Defendants Visionary Construction, Inc., Tasha Reid and Natasha Ford have not sought to hinder or delay this case or willfully disregarded court orders. They have switched attorneys two times already and the motion at CM/ECF 180 is devoid of an account of their efforts to secure new counsel within the deadlines set by the Court despite the imposition of monetary sanctions. The Clerk of the Court shall enter default upon Defendants Visionary Construction, Inc.,

> Tasha Reid and Natasha Ford. See Hooper Has v. Ziegler Holdings, LLC, 690 F.3d 34, 37-38 (1st Cir. 2012)("[D]efault may be a condign sanction when a court is confronted with a persistently noncompliant litigant"). The Clerk of the Court shall serve copy of this Order upon defendants to the addresses in the motion at CM/ECF 138.

(Docket No. 183). On August 27, 2026, Great Midwest filed a Motion for Default Judgment. (Docket No. 189).

## II. APPLICABLE LAW

### A. Default Judgment

Pursuant to Fed. R. Civ. P. 55(b), a plaintiff "'must apply to the court for a default judgment' where the amount of damages claimed is not a sum certain." Vazquez-Baldonado v. Domenech, 792 F. Supp. 2d 218, 221 (D.P.R. 2011) (quoting Fed. R. Civ. P. 55(b)). In the case at bar, Great Midwest seeks to be indemnified for a net indemnity loss in the amount of $899,300.07, consisting of $975,000.00 paid to Plaintiff in full settlement of the bonded claims, and $332,322.81 in attorney's fees, consultant fees, costs and expenses in investigating, defending and resolving Plaintiff's claims under the Bonds, minus a total of $408,022.74 recovered from the fund control accounts set up for the El Yunque Trails and La Mina / Big Tree projects.

"The default of a defendant constitutes an admission of all facts well-pleaded in the complaint." Metro. Life Ins. Co. v. Colon Rivera, 204 F. Supp. 2d 273, 274 (D.P.R. 2002) (collecting cases).

*See also* Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999) ("[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated."). However, following entry of default, the court may independently "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citing Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir.1992)). By virtue of the entry of default, all well-pleaded factual allegations in Great Midwest's Crossclaim and Third-Party Complaint are now deemed admitted.

**B. Surety's rights under the Puerto Rico Civil Code of 2020**

Through the suretyship contract, the surety binds itself to pay or fulfill and obligation of the principal if he or she does not do so. P.R. Laws Ann. Tit. 31 § 10551. A surety that fulfills its obligation becomes subrogated in the rights of the creditor. When the surety requests a refund of what it has paid, it may also demand interest from the date it issued the payment and costs. Id. § 10611.

## III. FINDINGS OF FACT

In Accordance with the aforementioned default judgment standard, the Court hereby makes the following findings of fact:

1. On November 4, 2022, Visionary, Mrs. Reid and Mrs. Ford executed a General Indemnity Agreement ("GIA") in favor of Great Midwest. (Docket No. 18-1).

2. Paragraph number 3 of the GIA provides, in its pertinent part, that

> The Indemnitors hereby, jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 3.7 hereof, which Surety may sustain or incur . . . by reason of or in consequence of the execution and/or delive1y by Surety of any Bond(s) on behalf of any Indemnitor . . .

   Id. at 1.

3. Paragraph number 4.1 of the GIA establishes, that under the Agreement the: "Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond and/or in connection with a bonded project shall be paid, compromised, defended, prosecuted or appealed. Surety's decision shall be final and binding upon the Indemnitors[.]" Id. at 2.

4. Paragraph number 4.4 of the GIA states, in its pertinent part, that: "an itemized statement of claims or losses paid or liabilities incurred and/or expenses paid or incurred,

declared to be true and correct by an employee or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitors[.]" Id.

5. Pursuant to the GIA, on November 16, 2022, and November 29, 2022, Great Midwest issued payment and performance bonds on behalf of Visionary for the El Yunque Trail Gabion Tower Stabilization and La Mina and Big Tree Trail projects, respectively (the "Bonded Projects"). (Docket Nos. 18 ¶ 1; 189-2 and 189-3).

6. Visionary subsequently defaulted on its contractual obligations on the Bonded Projects, thereby triggering claims under the Bonds and defaults under the GIA. (Docket No. 18 ¶ 14).

7. On June 19, 2024, GSI filed a *Complaint* against Great Midwest seeking recovery under the Bonds in the amount of $1,042,285.00, together with prejudgment interest, post-judgment interest, attorneys' fees, costs, and other relief. (Docket No. 1).

8. On September 4, 2024, Great Midwest answered the Complaint, filed a Crossclaim against Visionary and a Third-Party Complaint against Mrs. Reid and Mrs. Ford seeking indemnification pursuant to the GIA for all losses, costs,

expenses, and liabilities incurred as a result of issuing the Bonds on behalf of Visionary. (Docket No. 18).

9. On May 21, 2026, Great Midwest exercised its contractual authority under paragraph 4.1 of the GIA to settle Plaintiff’s claims and, on May 21, 2026, entered into a Settlement Agreement with Plaintiff, paying the amount of $975,000.00 in full settlement of the bonded claims. (Docket No. 170).

10. In addition to the settlement payment of $975,000.00, Great Midwest has incurred $332,322.81 in attorneys' fees, consultant fees, costs, and expenses in investigating, defending, and resolving Plaintiff's claims under the Bonds. Great Midwest has recovered $260,412.50 and $147,610.24, respectively, from the fund control accounts set up for the El Yunque Trail Gabion Tower Stabilization and the La Mina/Big Tree projects; and after applying all recoveries as credits against its losses, Great Midwest has sustained a net indemnity loss in the amount of $899,300.07 as a consequence of having issued the Bonds for the Projects. (Docket No. 189-7).

11. Therefore, all of the joint and several obligations of Visionary, Mrs. Reid and Mrs. Ford under the GIA are immediately and automatically due, owed and payable.

## IV. DISCUSSION

The GIA unambiguously obligates Visionary, Tasha Reid, and Natasha Ford, jointly and severally, to indemnify Great Midwest against any and all losses arising from the issuance of the Bonds. Specifically, Paragraph 3 of the GIA requires the Indemnitors to reimburse Great Midwest for all losses, liabilities, settlements, attorney's fees, consultant fees, costs, expenses, and every other expenditure incurred because of the Bonds. (Fact ¶ 2).

Paragraph 4.1 of the GIA grants Great Midwest the exclusive right and absolute discretion to compromise, settle, defend, or pay any claim asserted against the Bonds whenever it deems such action appropriate. (Fact ¶ 3). The GIA expressly provides that Great Midwest's determination shall be final, conclusive, and binding upon the Indemnitors. Id. Federal courts consistently enforce such provisions absent fraud or bad faith, neither of which has been alleged or could be established in this case.

The GIA further provides that an itemized statement of losses or proof of payment made by Great Midwest constitutes prima facie evidence of both the existence and amount of the Indemnitors' liability. (Fact ¶ 4). Great Midwest has issued an Itemized Statement of Losses in the net amount of $899,300.07 incurred due to issuance of the Bonds. (Docket No. 189-7). Accordingly, Great Midwest has established its contractual entitlement to recover its net losses of $899,300.07. Id.

All elements for default judgment are satisfied: (1) default has been entered; (2) the well-pleaded facts establish liability under the GIA; and (3) the damages sought are for a sum certain (supported by the settlement payment and partial recovery). Accordingly, no evidentiary hearing is necessary because the requested damages constitute a liquidated sum capable of mathematical calculation. *See* Fed. R. Civ. P. 55(b).

In accordance with the above, Great Midwest is entitled to judgment as a matter of law, jointly and severally against Visionary, Mrs. Reid, and Mrs. Ford, for the total amount of $899,300.07, consisting of the settlement payment of $975,000.00, plus $332,322.81 incurred by Great Midwest in attorneys' fees, consultant fees, costs, and expenses in investigating, defending, and resolving Plaintiff's claims under the Bonds; minus $260,412.50 and $147,610.24, that Great Midwest has recovered, respectively, from the fund control accounts set up for the El Yunque Trail Gabion Tower Stabilization and the La Mina/Big Tree projects. (Docket No. 189-7)

This Judgment is entered jointly and severally against Visionary Construction, Inc. d/b/a Visionary Services, Tasha Reid, and Natasha Ford. Accordingly, Great Midwest may enforce this Judgment against any one or more of the judgment debtors, subject to the limitation that Great Midwest shall not obtain duplicative recovery of the same loss.

Pursuant to 28 U.S.C. § 1961, the aforementioned amounts will accrue interest from the date of this judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the entry of judgment. Interest shall be computed daily until the date of payment and compounded annually.

## V. DISCUSSION

Considering the foregoing, the Court grants Great Midwest's Motion for Default Judgment against co-defendant Visionary Construction, Inc. d/b/a Visionary Services and Third-Party Defendants Tasha Reid and Natasha Ford at Docket No. 189. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of October 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge